Good morning, and may it please the Court, I'm Bradley O'Connell, representing Petitioner-Appellant Noble. I'd like to reserve three minutes for rebuttal. Unlike the gentleman on the preceding case, Mr. Noble is not facing 400 years, but he is under a sentence of 130 years to life. And the question before this Court is whether this pro se inmate petitioner is going to be denied his day in habeas court based on a single fateful decision he made in September 2005 when he was attempting to navigate the labyrinth of California habeas law. He had received from the Superior Court on his first petition a frustratingly vague order which stated several of the claims were barred because they could have been raised on appeal, and then the remaining claims denied for failure to state a prima facie case. The order did not specify which claims he considered barred by not having been raised on appeal. Mr. Noble recognized that he had a means to overcome that procedural deficiency because well-established California habeas law allows claims that would otherwise be forfeited by not having been raised on appeal. One can obtain review of their merits by means of a claim of ineffective assistance of appellate counsel. In effect, the appellate ineffective assistance claim operates as a gateway which allows review of those otherwise barred claims. So he knew what to do. He knew that what he had to do is add that gateway claim and then reallege the same 15 or 16 substantive claims he had in his original petition. That's the easy part. Here's where his dilemma came. He now has this omnibus petition, the appellate IAC claim and the substantive claims. Can he simply file it in the Court of Appeal or must he go back to Superior Court because the Superior Court hadn't previously had before it the appellate IAC claim? This is a question on which California habeas procedural law is, to put it charitably, opaque. Mr. Noble was perhaps hyper-cautious. He was aware, as he later cited in papers, of California law stating in general that a claim that a habeas petition presented for the first time to a reviewing court may be dismissed for failure to present at Superior Court. So he thought, I better file this in Superior Court. So that's what he did. He filed in Superior Court. Superior Court denied it. Then 45 days later, he went up to the California Court of Appeal, again filing the appellate IAC claim plus all the remaining claims. That's the history. And under both this Court's precedents and California law, he has not done anything wrong. More accurately, there is no problem barring him because this Court — the relevant case here is this Court's opinion in Delhomie v. Ramirez. Because the appellate petition contained the 15 or 16 substantive claims as alleged in the first Superior Court petition, the appellate petition was a continuation of that first round because a round doesn't end until those claims are exhausted at the level of the California Supreme Court. But when it starts attempting to traverse this Court and somewhat fail, then that would be considered fair and equal. Now, District Court and the Superiors did not hold that to be true, but the Chief Justice said to me, let me ask a question. Here he filed his first petition, and then that petition was denied. Yes. He doesn't appeal that petition under California law. What he does is file a new petition in the Court of Appeal. That's right, Your Honor. That is the mechanism for appellate review. Yes. So now he wants to do something a little more, so he decides to file it in the Superior Court, and then the District Court judge concludes that that's a new round, right? Yes, Your Honor. And that he doesn't give any credence to the first one. So that puts him in a bind that now creates a problem where he can't get any further. What was the error of the district judge in the 2255, in the habeas corpus? The error of the district judge was in concluding that the first round terminated. Yes. Even if one goes with the district judge's opinion that by virtue of the inclusion of what I'm calling the gateway claim of appellate IAC, that the second Superior Court petition represented a new round. Yes. That doesn't change the fact that the first round was continued in the appellate petition. In fact, what Mr. Noble did is exactly what this Court contemplated in footnote 3 of its dohomey opinion. Okay. Which is he consolidated the rounds at the appellate level. Well, whatever he did, it's allowed by the California law. The only issue, then, we have is that when he filed in the court of appeal, there's a timeliness issue. And let me address that directly because I've made a few complaints about the vagueness of California law, but one point on which it is not vague goes to Your Honor's question. Is that right? Yes, it is. I found it very confusing, so go ahead. The case to which I would particularly refer the Court is In Re Gray, which is cited in both the opening brief and the reply. Gray demonstrates that California's timeliness standard is essentially a lachies or diligence standard, which is intended to default people who sit on their rights, who just let something fester without doing something. If someone is actively taking steps to seek further judicial review, the California courts will consider that pro se petitioner diligent even if he takes the wrong steps. Now, Gray was a case in which a person was trying to get his notice of appeal filed. He'd initially, and he did, it was almost a comic opera of how many wrong steps and wrong forms he went to attempting to file his appeal. He initially filed his appeal in between conviction and sentencing, and that appeal got dismissed as premature. On the day of sentencing, he tried to file his notice of appeal. He was pro se at sentencing. He tried to file his notice of appeal in the sentencing with the courtroom clerk in the sentencing court, and the judge wouldn't let him file it in that. He said, no, you've got to go to the court's office. After that rejection, he filed a variety of proceedings. He did a motion to recall the sentence. He filed a federal habeas petition. He attempted to recall the remitter on the previously dismissed premature appeal, and he also filed something called a writ of review in the appellate court. Then, in the words of the Gray opinion, at long last, nine months after the original rejection of his court of appeal, he hit upon the right procedure. He filed a habeas corpus petition in the reviewing court. Now, even though there had been nine months, the Gray court said, he's been diligent. He may have proceeded inartfully. He did not follow the right procedures. But through this whole scenario, he has been attempting to assert his rights, and that's what counts. Yes. That's part of it. And then the other part is the court of appeal cases talk about reasonable time. Yes, Your Honor. Reasonable time. And then we have a case, Chauffeur, that says that it may be longer than the 30 to 60 days, which is a long way from the four and a half months that we have in this case. So how do we put together what the court of appeal has not been – and I'm not being critical, but the court of appeal has not been definite that it's six months, it's two months. They talk in terms of diligence, reasonable. How do we, over on this side, with all of that, make a decision as to whether or not your client's out of court because he hasn't been diligent or the time is unreasonable? I think, Your Honor, the key to Chauffeur and to some of the other cases in this line is the word unexplained. Here, it's not unexplained. We know exactly what he was doing. And, in fact, he was doing something that, if anything, regardless of whether or not we think it was correct. But was his explanation reasonable? He said lack of legal training and lack of access to an adequate law library. Is that an adequate explanation? I think that we said more than that, Your Honor. He also, in his opposition to the state's district court motion to dismiss, he cited, in Ray Ramirez, a California habeas case, which he believed told him to go to superior court. He also cited this court's opinion in Dell Home. He, when looks at the gaps between filings, there's just a 45-day gap between first superior court denial and filing a second superior court petition. Then there is a 42-day gap between second superior court denial and appellate petition. Neither of those gaps is problematic. Now, I realize because of the pendency of the superior court petition, that means that the aggregate, the total amount of time between the first superior court denial and the appellate petition is about four months. But we know the reason for it. The reason was he filed the second superior court petition. And waiting then to file the appellate petition until the second superior court petition had been resolved was reasonable from the standpoint of both California habeas cases and from the standpoint of this Court's cases. Because in Dell Home, the Court said we fully expect that even if we have two overlapping rounds commenced at a lower court, that as the defendant goes up the line, he'll consolidate them. And that's exactly what Mr. Noble did. And that's also consistent with California law. California law has a strong bar against piecemeal petitions. And so the Supreme Court, in the case of the second superior court petition, was able to do that by waiting until the second superior court petition had been resolved and then combining the claims in the appellate petition, rather than precipitously filing the petition, the appellate petition, leaving out the appellate IC while the second superior court petition was still pending. Kennedy. Counsel, may I ask you a question? Why did he not file the two new claims that he filed in his second superior court petition in his first superior court petition? That was a mistake, Your Honor. But it's not a mistake. It was a mistake that the claims existed. He was apparently unaware until that first superior court denial that the various claims he was raising would be barred by this principle of no habeas consideration to claims that could have been raised on appeal. And, again, the problematic thing about that superior court order is it didn't tell him which of those claims it referred to, because on their face, a number, I'd say most of the claims in his first superior court petition don't appear to be barred by that because the — I think you would agree with me that the first time he raises ineffective assistance of counsel in appellate, ineffective assistance of counsel, and the first time he raises the cumulative error claim is after the one-year statute has run. No, I disagree with that, Your Honor, because the first petition, he already filed the first petition. Those rounds — that commenced the first round and all these other claims. And that round remained — that round wasn't completed until the California Supreme Court denial. So even if we say — even if we choose to treat the appellate IAC claim as so new that we're not going to recognize it as a continuation of the first round, even if we say it's a new claim, it's an overlapping one. The round commenced with the multiple substantive claims of the first petition remains — that round remains pending as long as he goes up the line. But, counsel, what do you do with the case of King v. Roe in California, which says you cannot add new claims to your second petition? You can elaborate on the facts, but he added new claims, did he not, as Judge Reyes said? Your Honor, I would argue that it would make no sense — it is one thing to say you can't add a new substantive claim. But all he was adding was what I've been calling a gateway to allow review of the same claims he raised — he raised in the first petition. Again, and also let me just be clear, the King — I view the Delhomme v. Ramirez and the King v. Roe as alternative grounds for statutory tolling. I realize — I realize that the district court focused on — strictly on the King side of it, but they're alternative. Under the Delhomme rationale, which I frankly find more straightforward, it doesn't matter whether the Second Superior Court petition was a new round because the first one was still ongoing. And he was diligent in pursuing that first round, so he is entitled to tolling from his first Superior Court petition. He was diligent, again, by — because he stated two new claims in the second petition? Pardon, Your Honor? He was diligent in following the 15 claims that he had in his first petition because he stated two new claims in the second petition? He was diligent in trying — he had faced an obstacle in obtaining review. So he looked around and found a way to obtain review of that, and that's why he raised those claims. And that is, I think, consistent with the lessons from the Gray case I previously described, which is he is attempting to pursue judicial relief the whole way up the line. And I frankly — I mean, I've written articles in California habeas practice. I've taught on it. I've given lectures on it. I don't know the answer to the question that he faced when he got that first order as to whether he should have gone back to Superior Court to present the grounds for that, or should just have gone up to the Court of Appeal. If we were to fill this courtroom with experienced California habeas practitioners, we would not get a definitive answer for what is the proper forum to go to in that situation. But the one thing that is clear is the California courts will not — would not have a turn on that Superior Court petition. And for that reason, he is entitled to statutory tolling. And if I could just add one word in response to the letter which the Attorney General submitted Friday afternoon on Velazquez. I want to just — two points on Velazquez. That's on equitable tolling. Velazquez was represented by counsel. That's a big difference for equitable tolling purposes. And second, cases aren't authority for propositions not considered. Velazquez did not consider any issue of reliance on the multiple Ninth Circuit cases pre-Chavis, including the Ninth Circuit's decision in Chavis itself. There's no discussion of them in the opinion. And I would ask the Court to take judicial notice of the briefs in Velazquez. And that confirms what's implicit in the opinion. That argument wasn't raised. So therefore, Velazquez doesn't deal with our issue and it's irrelevant. And with that, I thank you, Your Honors. May it please the Court. My name is Pam Critchfield. I'm with the California Attorney General's Office. I represent Respondent in this case. Contrary to appellant's characterization, this case is really a straightforward tolling case. Appellant waited 338 days after his conviction was final to file his first habeas petition in the Superior Court. He raised 17 claims. When that petition was denied, he added two new claims, made no other changes, and filed a second petition in the same Superior Court, rather than proceeding up to the next level. Proceeding up, that doesn't mean appeal. It means filing a next level. Another original writ in the next level. Original writ. There's no appellate process. Right.  Why was this abandoned? After the first Superior Court petition was denied? Could he have, in your view, Ms. Critchfield, could he have filed a petition for habeas in the Court of Appeal with his original 2017 claims and added two that had not been in his first petition? Absolutely. It happens all the time. He could have gone directly to the California Supreme Court with his claims. Including the two new ones of ineffective assistance of counsel and cumulative error. Correct. And as long as he did that within a reasonable amount of time, the gap would have been told. This is a case of gap tolling. Was he proceeding pro se in both the first and second petitions that he filed in the Superior Court? Correct. I believe he was pro se the entire time, all the way up. So after the first petition, the Superior Court petition was denied, 27 days went by and the statute ran. The one-year AEDPA statute of limitations. 25 days went by. But he only had 27 days left on the statute when he filed that initial Superior Court petition. When that petition was pending in Superior Court, the statute was tolled. Once that denial occurred, then he had 27 days left until the statute ran, the AEDPA statute ran. He waited 45 days and went back to Superior Court rather than proceeding up to the Court of Appeal. Suppose the law of the State of California is such that it's time out for everything for six months.  Don't we have a problem between what he did in the Superior Court and his filing on the Court of Appeal as to whether or not it was reasonable? Yes. And saying that something is reasonable is like, how long is a string? Yes. So what guidance do we have here as to what reasonable means? Evans v. Chavez, the United States Supreme Court said held the delay of six months is unreasonable. For that case. But there's a different process here. There's no appeals of habeas corpus here. There's filing new habeas corpus. He was four-and-a-half months late. Correct. Between the denial of the first Superior Court petition and going to the Court of Appeal. Right. There's a four-and-a-half-month gap. So if he can get a gap of four-and-a-half months, he's home free. If he can't, he's out of luck. So we take a look at the cases in the Court of Appeal to find out what reasonable means. They're the ones that make the decision. We would submit that this Court has interpreted Chavez to hold that it presumed the 30-to-60-day delay is the norm in most states. And that is the norm that this Court is going to allow unless there is some circumstance that the appellant, the petitioner, can show caused the delay. We said substantially longer than the 30-to-60 days that most states allow for filing petitions is not reasonable under California law. So we look to California law, what we thought California law is. So you look to California law, which is what we are going to do. Our case shows that. And we find that in one instance, 10 months was allowed. In another instance, 5 months was allowed as reasonable. Now, if, as we say here, that we're going to look to California law, that is, is not reasonable or unreasonable under California law, I have difficulty finding out what is reasonable when there's large variance. We're trying to find out what would they do. Now, usually what we do, we send it back to them. We've just done a lot of that, certifying issues. We started that 20, 30 years ago. We finally got California to agree to it. They agreed to allow us to do it to the Supreme Court only. And so you would think that was the thing to do. And we tried to do that in a case called Shoffer v. Prosper, and we were denied. So we're told by the California Supreme Court, figure it out. And then we look to the California Court of Appeal to try and figure it out and receive these variances. Tell me what we do. I believe, we argue that you presume that 30 to 60 days is reasonable. And there are cases from this circuit that say that, hold that, that note that, that state that. Well, we have that 30 to 60 days that most states allow for filing. But then we say under California law. So we're really trying to interpret California law. And if in each of these cases you just went back to California law, there would be no answer. There's just too much variance. I understand that. And we tried to solve the problem by certifying, and that didn't work. That didn't work. And I think Evans v. Chavez set out a standard and that this Court has followed that and noted, stated, agreed that the 30 to 60 days is the norm. And that if it's beyond that, gap tolling is not allowed. But they have allowed it in the Court of Appeal, which is the California law. They've allowed 10 months. They've allowed 5 months. In some cases, and if you read, for example, in Ray Gray, the facts are wholly distinguishable from this case. I understand that. But it strikes me that in the district court, that the district court judge should have taken perhaps a closer look at what the California Court of Appeal has done and made an actual determination based upon California law of whether it was reasonable and the person was acting diligently. Why wouldn't that be our answer? We'll do as best we can, but we'll have a full hearing in the district court on the issue. Respectfully, I believe this was the issue dealt with in Evans v. Chavez. In the Supreme Court decided or stated that, yes, it's true, the delay of 6 months is unreasonable, but we have to have a standard so that the district court or the federal courts aren't trying to go in and interpret the labyrinth of California law and all the different factual scenarios that come up that allow a 10-month or a 12-month delay. And Evans was which court? The United States Supreme Court. They are even further away than we are. We're at least in California. True. It's not unusual for a district court to have a 10-month delay.  It's not unusual for a district court to have a 10-month delay. It's just unusual. You're right. Let me ask you a question. If Mr. Noble had not filed his second superior court petition, but had filed his court of appeal petition with the two additional counts, which you say is routine, when he did? Meaning in December, after four and a half months? After four and a half months. Would that have been within a reasonable time? We would argue, we would have argued to the district court, no. Because of the 30- to 60-day rule from Evans v. Chavez? Correct. But as my colleague Judge Wallace points out, California allow, California cases allow 10 months and 5 months. You would distinguish that, those cases as being on different facts. What are the different facts that allow California to extend the period of time from the normal 30- to 60-days to 10 months and 5 months? I, without having read those cases, I can answer to the sort of the survey that I did, conducted, actually district court cases as well as state court cases. Often, it is because of the Gray situation, the Inouye Gray situation, where it was just a very odd set of facts and he had represented himself at trial and wanted to file that notice of appeal and had been denied. The judge said, no, you're not allowed to file that with the courtroom clerk. And so he went around and around and finally was allowed to file. Other cases show that a petitioner has made substantial changes, corrections, elaborations in his petition. He's done additional research. He's found new evidence that really is new evidence. The district courts have allowed gap tolling for those situations that have allowed state gap tolling in those situations. In the district court of appeal? No, the district court of, the federal district court, as they're looking at the time that it took, whether to allow tolling for the whole round in state courts. They look at those types of issues. And I believe that the state courts are also looking at that. I believe that Evans v. Chavez and this court's interpretation of that in Velazquez, in Banjo v. Ayers, has said, we're going to take the 30 to 60 days unless we find something unusual. Because if you don't, then you are just continually going to go back and have to ask or have a hearing on it or try to figure it out, and it could be any answer. I think if the California Supreme Court had taken our suggestion and said that, this would be an easy case. And there's also an argument that the California legislature needs to enact strict time limits on habeas. That has been something before them for 25, 30 years, and there's been no action taken. Looking at the California case that allowed 10 months, I noticed that it could be distinguishable in that it was following the denial of parole. Yes. And the factual issues seem to drive the court's analysis in that case. Yes. But what you're really telling us is that we have to deal with, or whether the California courts are telling us, each individual case based on its individual facts, is that what we have known? I would not argue that. I believe that Petitioner or Appellant argues that that's what the defense would argue, or the, I'm sorry, the Petitioner, that you should go in and interpret what you think the state court would do. I believe the United States Supreme Court in Evans v. Chavez was saying, no, that's not what you do. We will say that longer than six months is unreasonable, and then we're going to look at the normal time, the appeal times that most states, including California, allow, the 30 to 60 days, and we're going to put that as an umbrella over the process to give you guidance. If I, if we follow your interpretation of Evans, which says no more than six months, he was within six months? Was it? I don't remember the exact facts in Evans. Was it? But they, and they found it not timely. Tough case. Let's hear first. All right. If there are no further questions, I would submit it on the briefs. Thank you very much. Mr. Cohn, you were over four minutes, your time, but we'll give you a minute to wrap up your rebuttal. Thank you, Your Honor. Let me just address the Chavez formulation. Under Chavez, if it's more than six months, it's presumptively unreasonable. If it's within 30 to 60 days, it's presumptively reasonable. When we are between 60 days and six months, that's when we have to look at the facts, and this Court has to make its best judgment about what the California courts would do. And I submit that there is not a single California case that would suggest that the filing of the appellate petition would be considered untimely in a situation where the reason for that was he had filed a second superior court application, perhaps wrongly. But there is no California case that has ever defaulted somebody in that situation. And I think it's also a rather odd defense of the State habeas where it's the State Attorney General who is pointing to the vagueness and lack of clarity in State habeas procedure as a ground for defaulting a pro se petitioner based on that single faithful decision. Because I notice the Attorney General has effectively conceded that if on the same date he filed the second superior court petition, if he had just made the other choice and instead taken that second superior court petition, that set of claims, and filed it in the Court of Appeal, we wouldn't be arguing here today. But that comes back to the question of whether this Court believes California would default him for having made that choice to go back to superior court rather than proceed directly to the appellate court. And what guidelines would you propose that we apply to find a California law or rule that would guide us away from default? Gray? Gray is part of it. Another part of it, I would suggest, is a case cited in the reply brief. I won't go through the whole history. I realize I've already used up my time. But Watson found a delay in filing habeas reasonable because the petitioner was waiting on the resolution of his federal petition. So that suggests that the state courts consider waiting for the resolution of another petition in a different court a reasonable ground for deferring filing the state habeas petition. And if anything, Watson would have been a more difficult case than this because I believe Watson – my recollection is Watson was represented by counsel. But then you would be suggesting that you could proceed by piecemeal petitions. Instead of putting all 17 in the first petition, you could put one in. And then 45 days later, put another one in. And then 45 days later, put another one in. And all that time would be told. That would certainly be an extreme situation, Your Honor. And I think in this situation, even if Mr. Noble made some missteps, by deferring his appellate petition until after the resolution of his second superior court petition, he avoided piecemeal presentation because he was able to combine all his claims in the appellate petition. Thank you very much. I would also ask the Court to consider, I haven't talked about it, but the equitable tolling as an alternative ground. Thank you very much. Once again, we compliment counsel for very well-prepared and cogent arguments in what I have to tell you is a difficult case. All right. Thank you very much. Noble v. Adams is submitted.
judges: Wallace, Nelson, Bea